Beginning with Miller v. Kroger Company. Mr. Cornwell. Yes, Mr. Cornwell. It's probably not a good strategy to start off with an apology, but that's what I'm going to do. I'm wearing hearing aids, and the reason I didn't stand up is I couldn't hear what you were saying. I guess you were saying it's time to begin. We do have some acoustics problems in our courtroom. Well, I'm going to try. Just to tell you the truth, I'm here mainly to want to know what you guys would like me to answer questions on, and I hope I can follow your questions. That's the main thing I'd like to do today. At any rate. Just don't refer to us as you guys and your old DuVine. I'm sorry. Tell me again, Your Honor. Just don't refer to us as you guys. All right, I apologize. Do you agree, Mr. Miller, that, I mean, this is a case at the 12B6 stage, the pleading stage. Do you agree we have to, I mean, I think you do, but I just want to make sure. Do you agree that we have to apply the Supreme Court's precedence in Iqbal and Twombly? I'm sorry, Your Honor, I'm not catching every word. I understood Twombly. Do we have to apply those cases? Oh, yes, I think so. I mean, there's no exception to them. I don't know of one. So I addressed them in my brief as if they were something that needed to be considered. I don't think that they changed the law as applied by the judge in this case. He didn't take the new standard in that case and say, you know, this is not feasible. This whole thing doesn't seem feasible. But I think the standard is we have to have enough facts. We can't just have legal conclusions, right? Yes. We have to have facts. Yes. You know, there has to be at least some, you know, plausible, I forget the exact language from Twombly, but there has to be. We have to be able to look at the facts and go, okay, if you can prove that, then you can go forward. But if they're just conclusory or legal conclusions, then we can't do anything with that. Do you agree with that? I agree with that, Your Honor. However, I have a little different take on what the facts mean. There's two issues in this case. One of them is did we plead enough based on the law in our complaint to support the judge throwing the case out? And there's two ways to look at that. One of the ways to look at it is we pled a lot of facts, tons of facts, indisputed facts, facts that were never disputed during this long course of litigation. But the facts we pled, and I think they accomplished what the rules require, which is basically a couple of things. Do we have a case worth pursuing? And can the other side understand what it is? That's what the law says. The law does not say that you have to prove or state facts that show all of the liability. What we did to show the liability is rely largely because we didn't have the kind of facts that you would commonly find in a slip and fall case, a premises liability case. Well, for example, what? What do you lack in your? Oh, we lacked all kinds of things. No question about it. And the reason was the discovery was, in my opinion, the most abusive discovery by the defendant that I think I've ever seen. I've been practicing law, trying cases in federal court for 55 years. I tried my first case in 1970. I wrote my first brief in the U.S. Court of Appeals in the Seventh Circuit in 1970. I've seen a lot of problems. And, obviously, every case is different. Sometimes when you file the case, you've got all the facts that you would ever want to do it the way it's commonly done, which is to lay out, okay, well, they did this and they didn't do this. And you lay out the negligence. You lay out what's wrong in the store. When did they find out what the problem was? What action did they take to cure it? On and on. But, in this case, the defendant not only engaged in discovery that was abusive, meaning never could get a witness to appear, never could find a date to give us a deposition, et cetera. And so what I did was the best I could do under the circumstances. And that started even before I filed the case. I asked for data from their claims manager before I even filed the case. And I said, look. She said, oh, I've got all this data. I've got videos from the store's security cameras. I've got all this stuff. And it shows you don't have a case. And I said, fine. If I don't have a case, I sure don't want to file one. Send it to me. And she wouldn't. The document's in the record, of course. She wouldn't send me anything. And then we find out, in the very first hearing we have in the case, the judge said, tell me about the case, Mr. Cornwell. And I took about two minutes. And what I basically said was, your Honor, I'm here representing my son, Ryan Miller. And this case, he had a fall in the store in July of 21. And the judge said, are you kidding me? This is now January. I mean, no, this was now, oh, it was in the spring. I have the date here in front of me. At any rate, this was months later. And he said, he turned to the defense counsel. He said, look, this isn't Mr. Cornwell talking. This is me talking. After all this time, where are, and I told him, we still don't have the videos. He said, where are the videos? Go get them right now. I'm telling you, go get them. We didn't, he didn't, Kroger did not follow the court's instructions. In fact, the first time they even mentioned the court's instructions was up in September, six, eight months later. And they offered excuses, objections to producing the documents. So that's just a small little point among a hundred. And let me just record real quickly.  Let me direct your attention. In your amended complaint, on page two is where you set for, quote, the facts. The trial court dismissed saying that your amended complaint did not, that your amended complaint was conclusory. So I'm just asking, in the complaint here, you say defendants negligence was approximate cause, failing to inspect, et cetera, et cetera. What facts in this complaint comply with Twombly in terms of actually showing what even happened? What the complaint consists of, Your Honor, is two things. It says what we're going to prove are the things we need to prove. That just gives the other side a good idea of what the case is all about so they can start getting prepared for it. But on top of that, we relied on spoliation, which is one of the oldest pieces of law around. It's been around for a hundred years. It is adopted, accepted, and used by all the federal courts and the state courts throughout Texas and the United States, actually. And what that spoliation law says. The quarrel is not whether spoliation is an operative document. The question is, for these purposes, what words in this amended complaint set forth what happened to your client while in the Kroger store? Not the conclusions from the problem, but what happened? I think I just disagree with you, Your Honor, and here's the reason. The law doesn't really say it that way. It says you have to let the other side know what the case is all about, and you have to show a basis for liability. The spoliation law, the inference that is drawn from spoliation, is liability, wrongdoing and liability. And as it goes way back to Wigmore, it's been around forever. Every court that looks at this says, look, there's only one reason for someone to not produce relevant material evidence, and that is... Going, well, I'm not arguing the case with you, and I don't see that you pled this as a racist blockadeur. The fact that he failed means that... Listen to me. The fact that he failed, something happened. All I'm asking you, the district court dismissed the case on 12B-6, saying that it failed to state the plausible basis for relief. And I'm just looking at your complaint in these paragraphs, and I'm just asking you, what should we see? What words here that are not conclusory that would allow us to give you relief? That's all, not spoliation. I'm just asking about the document. All I can tell you, Your Honor, I guess, is that this is the way I look at it. Kroger is, well, let me just tell you what Kroger is all about and what inference I draw from that, just for starters. It's a $132 billion a year company that owns 2,800 supermarkets in 35 states and has hundreds of slip and fall cases all the time. It knows what to do to investigate them. It knows how to beat them. It knows how to win them. And so what I basically said in the complaint is that a slip and fall occurred in Kroger's. Well, it's certainly not implausible that slip and falls occur in Kroger's. And the next question is, are they liable for it? What the spoliation evidence says is that the inference to be drawn from spoliation, and the spoliation here is across the board. There was a number of things. We never got to – they hid all of the witnesses. They wouldn't let us interview their witnesses. And most importantly, the videos from the surveillance cameras, the security cameras that appear on nearly every aisle in the store, those – what they – we never got them. Even after the judge started off telling them to produce them, we never got them. And it turns out that they destroyed them. So why did they destroy all of this evidence that was obviously relevant to the very case that they see every day of the week and that the court told them to produce in this case? Mr. Cornwell, excuse me. Yes, sir. Do you have a – you're talking about spoliation quite a bit. Do you have a ruling from the district court with respect to spoliation that we are – can review as opposed to just arguments of counsel? What I have is the words, and it's in a transcript that we cited, and the words are to counsel for Kroger. Get those videos. Find out where they are. Why haven't you already given them to Mr. Cornwell? It's in a transcript, and let me just tell you the date of it so that – okay, let's see here. In the initial hearing, June 24, 2022. Those are the court's words. Meaning what? It was an initial pre-trial hearing, something like that, pre-conference – not pre-trial, but – An introductory – Okay, so the district court said produce the documents. Did you file a motion with respect to the documents that got a ruling from the district court that we can review? One of my complaints just generally about the court was that in almost every motion that everybody filed, we filed a detailed order to be signed. If he's going to grant what we got, sign it. The court very seldom signed those orders. In fact, I filed a huge motion to compel the videos and everything else, and I laid all of this out in detail. And all that happened was when I went to the hearing, and it was a two-hour hearing, the court basically told me on numerous occasions that – and I cited law for some of these things, which I can talk to you about if you'd like to hear it. But what the court did was to say to me on more than one of those subjects, well, you know, that's not the way I did it when I practiced law. I did it this way, and I said, Your Honor, but this is the law. Please follow the law. And he said, no, you know, just like as an example. The law is very plain that under Texas law that a lawyer like me on the opposite side of a case gets to interview a corporation's employees. They don't own them. They don't represent them. They're just employees. And so unless they are either an employee whose liability makes the corporation vicariously liable or they're an employee who has been put in a position to handle this case, those two narrow categories, the opposing lawyer doesn't get to go interview. But everyone else, he does. And I'm an old-time federal prosecutor. I started with the U.S. Department of Justice in the organized crime section. I tried and convicted 60 or 70 mafia guys, and they had two mafia families. So I look at things partly from those perspectives. And one of the perspectives that hits me in this case, I indicted, tried, and convicted people for doing no more than what this judge told me in this case was okay. You know, that it was okay if I didn't get to interview the witnesses. Kroger could protect them and keep them away from me. I indicted a man who did no more than that. He said to a guy, get on a bus and just get out of town for about three or four months until this investigation blows over. It's obstruction of justice. I convicted him. The judge there gave him the maximum. And so when I look at this judge who told me, well, do it the way I did it when I was practicing and just go to the other side, and if they want you to interview a witness, they'll let you do it. Otherwise, you know, get a deposition. Well, that's – and the judge – I mean, I'm not shy, as you can probably tell, but I didn't want to irritate this judge. He told me, don't do it. And he said, are you telling me you're going to go behind the lawyer and the owners of Kroger's – go behind their back and interview these witnesses? And I said, well, in one sense, I guess that's what I'm saying, Your Honor, but I wouldn't describe it as going behind their backs. I have a legal right to interview them. And so he said, well, you just try that, see how that works out for you. I mean, he didn't hold me in contempt, but I sure didn't want him to. He made himself pretty clear. So I was just going to do what he said. And then I tried to get a deposition for months and months and months. I never got a deposition in this case. All right. Your initial time has expired, Mr. Cornwell, and you've saved time for rebuttal. You've saved five minutes for rebuttal. Okay. All right. Mr. Green. May it please the Court. Your Honors, my name is Adrian Green, and I represent the appellee in this matter. The Kroger Company and Kroger, Texas LP. The issue before the Court is quite simply whether appellate in his first amended complaint pled sufficient facts to state a claim for relief that is plausible on his face. Judge Duncan, you touched on that already. The cases that we rely on primarily, which are determinative here, are Twombly, Iqbal, and another case out of this court, Akerson v. Bean-Dredgen. What essentially has happened here is we have the appellate, who is conflating several different phases of litigation, when the only focus here is the pleading phase. You have him actually not really speaking to Judge Stewart's direct questions regarding what facts are alleged in his complaint. That's the pleading phase. Instead, he focuses on the discovery phase. And now you've just heard him talk about spoliation, which is an evidentiary phase. The Supreme Court in Twombly, Iqbal, and this court, and Akerson, have all said, you're not entitled to discovery with respect to the defense of a 12B6 motion. What the Court looks at, as Judge Duncan stated earlier, it's a two-step process. The first step, according to Twombly and Iqbal, is you separated the well-pleaded facts from the legal conclusions. Judge Stewart asks simply, what are your well-pleaded facts, as opposed to the legal conclusions in your complaint? You never really got an answer because there are no well-pleaded facts in the complaint. In the complaint, it merely states what the claims are, what the causes of action are, what the elements are. I mean, I think to be fair, in paragraph 6 he says, Mr. Miller, something that is not specified caused Mr. Miller to fall to the floor in a shopping aisle within the store suffering various injuries. I mean, that's a fact. He's pled that. Why isn't that enough? That's actually a conclusion, Your Honor. He slipped on what? This is a premises liability case. In a premises liability case, what you have to prove are four elements. A condition of the premises created an unreasonable risk of harm. A property owner knew or reasonably should have known about the condition. The property owner failed to exercise ordinary care to protect the plaintiff from danger, and that failure was approximate cause of plaintiff's injury. As the district court pointed out, what we have here are these threadbare conclusions that Twombly and Iqbal specifically said are insufficient. So even if he could establish and separate the well-pleaded facts from the conclusions, the next step in the process is you have to determine facial plausibility, not possibility, not probability, plausibility. There's nothing in the complaint that speaks to that. In the three cases that I referenced earlier that the court is very, very aware of, discovery is not a new concept in those cases. When we look at Twombly, the word discovery was mentioned 60 times. When we look at Iqbal, the word discovery was mentioned 23 times. When we look at Akerson, the word discovery was mentioned 14 times. I would posit to the court you see these numbers decreasing because Akerson pointed out at page 209 of that decision, because the court is directed to look solely at the allegations on the face of the pleadings, discovery would not assist the plaintiff in defending a 12C motion. The district court clarified that's exactly what we have in this case, is a 12C motion which is analyzed under the standard of 12B-6. Akerson also noted the inquiry focuses on the allegations in the pleadings and not whether the plaintiff has sufficient evidence to succeed on the merits. At that particular note, it points to footnote 49, which is a reference to Southwestern Bell versus the city of Houston, and in that case AT&T wanted discovery. This court held when deciding whether to dismiss, the court considers only the allegations in the pleadings, not discovery, not this amorphous issue with spoliation which Judge Duncan pointed out accurately. There is no ruling on spoliation. Spoliation is far down the road. Mr. Green, so I heard some discussion from Mr. Cornwell about his colloquy with the court about, well, I need to interview witnesses or I need the videos or all this kind of thing. How did that come up in this litigation? In what context did that come up, those discussions? It came up initially at the initial conference, and it came up repeatedly through various motions to compel, whether it was Kroger filing a motion to compel or the appellant filing a motion to compel. Kroger had to file a motion to compel because we wanted his medical records. We wanted his medical records because in the record, Your Honor, the record of appeal, pages 836 through 839, there's a letter from my office to the court dated December 16th, 2022. While discovery should not be discussed here, we're discussing it now. In that letter, we noted that while plaintiff had not given us an authorization to obtain his medical records, we were able to obtain some medical records, and we can't put those records into the record of the court because it violates HIPAA. However, we did note that in August, months after this incident, the plaintiff appeared at a neurological consult, and he said he passed out. Not that he tripped, not that he slipped on a substance, he passed out. There are some records that indicate that he may have been suffering from withdrawal from intoxication or alcoholism. We don't know because we never got those records. So the context cuts both ways, Judge. This was a contentious case. No, we did not want him interviewing Kroger employees outside of the presence of their counsel. No, we did not want him to just have a free swing at talking to our employees about what happened on that day. And also, Judge, I will point this out because, again, it was brought up in the record of appeal at page 902 during one of these hearings where the judge specifically went down and addressed what he said he didn't address. No, there's no order, but there's a transcript where the judge overruled and sustained certain objections. At page 902, the attorney on behalf of Kroger specifically told the judge, Your Honor, there is no video. So this issue about the video, again, is this conflation of pleadings, discovery, and evidence. When he doesn't have the pleadings, he says, Contrary to the rulings of this court, contrary to Twombly, contrary to Iqbal, contrary to Ackerson, well, I need discovery. All of those claimants wanted discovery. And each time the court said you're not entitled to it, what we look at are the pleadings. Here, when he can't get the discovery, now it becomes, oh, well, there's foliation. There's this grand conspiracy. It kind of bled out today. Even the judge is apparently on Kroger's side because he's not allowing him to do what he wants to do, he being the appellant, in terms of going outside the pleadings of his complaint. His complaint has no facts beyond conclusions. There is not. Was there, I just want to clarify, and this may be ground that we've already gone over, but was there any kind of a directive, either oral or written, from the court to supply the videos? What the court said, Your Honor, is if there is a video, I'm instructing you to get the video. I'm instructing you to move some folks around to figure out whether there is a video. And what happened then with the videos after that? There was no video, Judge. This happened, the incident actually happened on the pet food aisle. All right, so you, did you tell the court at that point that there was no video? At page 902 in the record of appeal, Your Honor, I believe it's 902, there's a transcript of a hearing that appellant attached to his motion for reconsideration. In that transcript, the judge goes through all of the discovery disputes that he is asking us, he, the appellant, is asking Kroger to respond to. With respect to the video, Kroger responded none. The court said if that's your answer, that's what you're stuck with, and the flat-out answer, Judge, is there was no video of this incident. There is no video of this incident. There never was a video of the incident. I have no idea. Again, the other issue here is in this complaint, there's nothing. However, before the amended complaint was filed, there was discovery. There was an incident report that was provided. There were photographs that were provided. So to the extent there was anything to be said about how the incident happened or what caused them to fall, there's plaintiff's own statements or appellant's own statements, and there's anything he could have gleaned from the incident report that we produced and the photograph that we produced. In the incident report, Your Honor, in the record of appeal, the program manager who came to the scene looked around and said there was no hazard on the floor. Again, there's no hazard, and it's consistent with his pleadings. There's no hazard identified in that either. That is what we're stuck with. We're stuck with what does his complaint say with respect to what is the condition, how is it there, how long was it there. There's no indication of any of that, which the district court correctly decided, Judge. And when we look at his motion for reconsideration, there is one statement in there that I would point the court to that appellant seems to quibble over right now. Apparently because we use the word admit, you can use admit, you can use agree, you can use consent, you can use acknowledge. It doesn't matter. But what he said is the court, meaning the district court, correctly noted in its order that appellant's first amended complaint does not contain the factual detail commonly contained in a federal complaint. In considering the motion for reconsideration, the district court said, essentially, I don't understand why we're here, plaintiff agrees that the complaint does not have the factual allegations. Even before this court, Judge Stewart again asks specifically, what are the factual allegations in the complaint? He couldn't tell the court one. He couldn't identify a single factual complaint, not a conclusory complaint, not a legal argument, but a fact that supports any, let alone all of the elements in his complaint, in his first amended complaint. So if you can't separate the well-pleaded facts from legal conclusions, your honors, you can't get to the second part of the Twombly and Iqbal analysis, which is to determine facial plausibility. There are no facts upon which you can say this claim is facially plausible. He simply does not or has not alleged any facts, which the district court correctly noted, and which Twombly, Iqbal, and the Fifth Circuit have said, that's what you look to. You don't look to discovery. You're not entitled to discovery at this phase. At this point, I think you're repeating yourself, Mr. Green. Yes, your honor. You have plenty of time left if there's something else you want to point out to us. Judge, again, the three cases that I've noted are the three cases that are determinative of this. I would rather not waste the court's time. What we would ask the court is to affirm the district court's ruling in this regard. Thank you, your honors. Thank you, Mr. Green. Mr. Cornwell for rebuttal. I don't know if I heard him correctly, but I think he said this was a 12B6 motion that was attacked as a 12B6. It's just the reverse. They filed the 12B6 motion. The judge said he was going to treat it as a 12C motion. Let me just basically address the issue I came here for. What I said below is that the kinds of things you normally see in a case like this, we never had our hands on. But they said instead, they said it right here in their brief, but they said that we admitted to the court we didn't satisfy the federal pleading requirements. I've been trying cases in federal court for 55 years. I've only been thrown out of federal court one time in those, well, twice, but the second one I got reversed by the court of appeals. I understand the seriousness of putting stuff in a complaint that you need to put in it. What we put in it, they kept saying over and over and over again, we never pled facts. We pled undisputed facts. The question is what are the right inferences under the law to draw from those facts. I asked you that question. What facts? And you have yet to answer me. Listen to me. Don't talk while I'm talking. I don't mean to interrupt, Your Honor. I asked you that. You're here on 12B-6. I said identify in this pleading, not the rest of this, but what's in here. You're on 12B-6, so just identify that while you're here. You heard counsel opposite say to the contrary, so rebuttal, help us better understand. We're not opposing your view. We're just trying to understand from your pleading what keeps you in court in light of the case law. That's all. The undisputed facts that there was spoliation from which the court should have drawn the inference of wrongdoing and liability. That's what's in the spoliation law. Those are the proper inferences to be drawn from spoliation, and that's what I meant by the facts. The facts showing the spoliation are in my complaint. Let me just see. Let me put it this way. If you look at my motion seeking oral argument and you look at their motion, you'll see what the difference is between them and us in this case. I said oral argument would be important because there is a paucity of law on cases like this where there's a big complex of discovery and spoliation and other things that need to be taken into perspective when you rule a 12B-6 motion, and it was a war. I've been around long enough to say this was a war. Let me just tell you, what this war produced is nine and a half gigabytes of data, 1,437 files and 95 folders. That's in my computer. All of that basically came from discovery disputes. So that war, it's hard to even start addressing it in the time we have here for argument, but let me tell you where the best place is for you to look and just get a flavor for all of the issues that were in this discovery war, apart from the fact that we never got the important evidence, the videos and the witness testimony, the depositions. Look at our motion to compel. It was file 313-23. It's at the record on appeal 1007, et cetera. There's another one. Let's see here. Well, that's the biggest one. There's a couple of other really big ones. To just summarize all this, I put all of the detail in front of the judge, and I never got anything. The judge did finally set some deadlines, but when he finally ruled, let me just, this will be my final thing. When he finally threw the case out, the discovery deadline was still months away. In July, he threw it out in February, and the trial date was not until September. So there was months left that we had to get the data. Your time has expired, and your case is under submission. Thank you. Thank you, Your Honor. We'll make the case for today, Rubin v. De La Cruz.